Mr. Justice Cox
delivered the opinion of the Court:
This case has been before the Court several times and has given us a good deal of trouble.
Reynolds desired to purchase a house, and his attention was directed to certain houses in course of construction at the corner of S and Sixteenth Streets, in this City. A sign directed him to the office of Francis H. Smith & Son, and he entered into communication with them. He found in their office, and apparently acting as a member of the firm or as an agent of the firm, Mr. E. J. Sweet, with whom he also had some dealings with reference to these premises. He bought the house at the intersection or corner of the street, and he then desired to have some additions made to *498 it and employed these men, F. H. Smith & Son, as he supposed, to make these additions.
Some time afterward he bought two other houses, one on Sixteenth 'Street and one on S, connecting with the corner house.
Reynolds claims that he was dealing with F. H. Smith & Son as principals.
After some time, and after a good many payments had been made, and some payments made to E. J. Sweet, he had some sort of an accounting with them, and found that they had failed to give him credit for payments made to Sweet, and thereupon he brought this suit for an account.
In his bill, he claims that he entered into the agreement of purchase, with the defendants, as agents of William R. Hooper, and he claims that he made certain payments for which he was entitled to have credit on his purchase money.
The question was, at once made, whether he had not misconceived his remedy, and whether he ought not to have sued Mr. Hooper, if Smith & Son were the agents of Hooper. If he made payments to them on Hooper’s account, he was entitled to have credit for them in accounting with Hooper and was entitled to have specific performance by Hooper, and to have credit for those payments received by Smith & Son.
The question over which the controversy turned, principally, at the first investigation, was, whether Sweet was an agent of Smith & Son, or a member of the firm, so as to bind them by receiving the payments from Reynolds. We thought the evidence clearly showed that Smith & Son had so held out Sweet, either as a member of the firm or as an agent of theirs, that they were bound by his receipt of those payments from Reynolds, and we directed the case to be referred to the auditor to state an account on this basis, but in that reference we say:
*499 “And all further matters of decree herein are hereby expressly reserved.”
The account involves quite a number of items, and it was bandied back and forth between the general and special terms, and only recently it was finally settled and all the exceptions to the account were disposed of, and the items finally decided by this Court were sent back to the special term, but sent back without any final decree.
When it came up in the Special Term, an application was made for a decree for payment on the balance ascertained by this account to be due from Smith & Son to Reynolds, and that decree was rendered by the Chief Justice. An appeal was taken from that decision and the case brought to this Court again, and here it was heard by Justices Hagner, James and myself.
And here again we are confronted with the same question made at first, viz: The question whether the claim should have been made against Smith & Son, or against Hooper, and whether it is not a case for common law cognizance and one which does not appeal to equity for relief.
The defendants rely, in the first place, upon the plaintiff’s own averment, that he entered into this agreement with the defendants, as agents of Hoopoi’, and also upon the written agreement offered in evidence for the sale of these two houses bought, after the first purchase, in which Smith & Son described themselves expressly as agents of Hooper; and there is a great deal of force in the suggestion that this is sufficient proof that the plaintiff had misconceived his remedy' and ought to have brought the suit against Hooper.
But when we come to look at the evidence, we find that it makes out quite a different case from: the bill.
The first of the purchases was made from Sweet, of the corner house, and he signed himself simply as agent. Reynolds says, and we think he is perfectly justifiable in thinking so, that he took it for granted that Sweet was the agent *500 for Smith & Son, and he never was notified to the contrary until the deed was presented, containing Hooper’s name as grantor.
The other two houses he bought from Francis H. Smith & Son, but the agreement offered in evidence, bearing date March, 1882, in which they describe themselves as agents for Hooper, was not reduced to writing and signed by him until more than a year afterwards, that is, in May, 1883, after all the payments had been made and all the transactions completed. During all that time, it does not appear that he had any intimation that Hooper was the principal of these parties. So that, in our judgment, he was perfectly justified — if that is material — in looking upon F. H. Smith & Son as principals with whom he was dealing in the purchase of the houses. Not only was he justified in doing this, but the evidence further tends to show and satisfy us that he could not look to anybody but F. IT. Smith & Son as principals. It is perfectly plain that Sweet was not the agent of Hooper. Hooper says that he saw Sweet about the office of Smith & Son and remonstrated with them for having him around there. So, that although Smith & Son were bound by those payments that were received by Sweet, Hooper was not bound by them. Therefore Reynolds could not have claimed credit as against Hooper for those payments as made upon account of the two houses sold by him through Smith & Son as agents. If Smith & Son failed to account for the payments to Hooper they were bound to answer for them to Reynolds, and Reynolds could not sue anybody else for them. So that, in point of fact, his plain recourse was against Smith & Son to recover for the payments made on account of the purchase of the houses.
Now, it is true that if this had been all, his remedy would have been at common law, in an action for money had and received.
In his bill he says — and it turns out to be true — that *501 there were three accounts, and payments made on one were misapplied to another. In the first place, they were making-additions to his house; in the next place, they were collecting rents from his houses to be applied to the purchase money; and in the next place, they were receiving payments from him directly on account of his purchase money, and he complains that they have so mixed up the accounts that he does not know exactly how he stood with them. It does not seem to us that he could have adequate relief otherwise than by having this account straightened out under'the direction of a court of equity, and we think that real justice has about been done by having an account stated by the auditor under the direction of this Court and the decree for the balance.

Therefore we will not disturb the decree as it was rendered in the Special Term.